**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No.  93-cr-00354 (EGS)** |
| | ) | |
| **RAYFIELD WILSON,** | ) | |
| **Defendant.** | ) | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S *PRO SE* FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

The United States respectfully submits this opposition to Defendant Rayfield Wilson's *pro se* motion pursuant to 18 U.S.C. §§ 3582(c)(1)(A) and 3582(c)(2). (ECF No. 33).[1]

**OVERVIEW**

In his *pro se* motion, defendant seeks a reduction of his sentence under 18 U.S.C. §§ 3582(c)(1)(A) and 3582(c)(2), relying principally on three theories: (1) his post-sentencing rehabilitation; (2) asserted changes in crack-cocaine sentencing law and resulting sentencing disparities; and (3) the Bureau of Prisons' treatment of his D.C. Code and federal sentences as an aggregate sentence, which he contends affects his eligibility for First Step Act earned time credits. (ECF No. 33). None of these theories warrants relief.

First, to the extent defendant seeks relief under § 3582(c)(2), his claim fails as a matter of law. Section 3582(c)(2) provides only a narrow avenue for relief where the Sentencing Commission has retroactively lowered the defendant's applicable guideline range. Defendant identifies no

---

[1] Based on defendant's caption, ECF No. 33, government interprets defendant's *pro se* motion as one seeking relief under 18 U.S.C. §§ 3582(c)(1)(A) and 3582(c)(2),. However, to the extent that this Court interprets this motion as one pursuant to 28 U.S.C. § 2255, the government submits that defendant's motion should be denied as procedurally barred given that it raises issues previously raised and denied in his 2017 28 U.S.C. § 2255 motion. Otherwise, for reasons stated in this Court's order denying defendant's 28 U.S.C. § 2255 motion, it should also be denied on the merits.

retroactive Guideline amendment that lowered the range applicable to his conviction under 18 U.S.C. § 371, and he therefore is not eligible for relief under that provision.

Second, to the extent defendant challenges the Bureau of Prisons' execution of his sentence—specifically, its determination regarding his eligibility for First Step Act earned time credits—that claim is not properly before this Court. Challenges to sentence computation or credit application must be pursued, if at all, through the Bureau of Prisons' administrative process and then in a petition under 28 U.S.C. § 2241 filed in the district of confinement against the proper custodian. Because defendant is confined outside this District, this Court lacks jurisdiction over any such claim.

Third, defendant has not established an extraordinary and compelling reason for relief under § 3582(c)(1)(A). His rehabilitation, while commendable, is not enough. His asserted change-in-law and sentencing-disparity arguments fail because his conviction under 18 U.S.C. § 371 is not a covered offense under the Fair Sentencing Act or section 404 of the First Step Act, and he identifies no legal development that would require the sentence imposed in this case to run concurrently with his D.C. sentence. As this Court previously explained when denying defendant's earlier compassionate-release motion, "[defendant] has not presented the Court with any changes in law that would require a judge sentencing him today to make his federal sentence run concurrent with his Superior Court sentence, producing a gross disparity between sentences.") (ECF No. 30 at 7 ).

In all events, the § 3553(a) factors independently foreclose relief. Defendant began serving the consecutive 60-month federal sentence in this case only after completing his D.C. Code sentence in August 2025. Reducing that sentence now would effectively nullify the separate punishment this Court imposed for a distinct federal offense and would undermine the goals of just punishment, deterrence, and respect for the law. The motion should therefore be denied in its entirety.

## BACKGROUND

### I. Pretrial Proceedings

On April 9, 1992, an undercover Metropolitan Police Department agent, accompanied by a confidential informant, conducted a controlled purchase of crack cocaine from defendant near Big Man's Barbershop in Washington, D.C. The transaction, arranged by telephone, involved the sale of one ounce of crack cocaine for $1,000. The informant, equipped with a recording device, captured the exchange, and law enforcement surveillance confirmed defendant's role in distributing crack cocaine. (Ex. F, ECF No. 27-5).

On September 30, 1993, a federal grand jury indicted defendant on one count of conspiracy to distribute and possess with intent to distribute cocaine base, in violation of 18 U.S.C. § 371. (ECF No. 1). While this case was pending, defendant was convicted in the Superior Court of the District of Columbia for violent offenses committed in December 1992. Those convictions included second-degree murder, voluntary manslaughter, carrying a pistol without a license, and possession of a firearm during a crime of violence. Defendant received consecutive sentences of 15 years to life for second-degree murder and 13 years to life for voluntary manslaughter, in addition to concurrent terms for the firearm-related offenses. (*See* Presentence Investigation Report).

On February 27, 1995, defendant pleaded guilty to conspiracy to distribute cocaine base, in violation of 18 U.S.C. § 371. (ECF No. 14). On June 28, 1995, Judge Thomas P. Jackson sentenced defendant to 60 months' imprisonment, to run consecutively to any other sentence, followed by three years of supervised release. (ECF No. 18). Defendant did not appeal his federal conviction or sentence.

**II. Post-Conviction Motions**

In 2017, defendant moved to vacate his federal sentence under 28 U.S.C. § 2255, arguing that his federal sentence should run concurrently with his D.C. Superior Court sentence. This Court denied the motion as untimely and procedurally barred. (ECF No. 26).

On November 14, 2024, defendant filed his first motion for compassionate release. (ECF No. 30). In his motion, defendant argued that his federal sentence should be modified to run concurrently, rather than consecutively, to his Superior Court sentence. (ECF No. 27 at 3). He contended that, had the sentencing court been properly informed of the available sentencing options—most importantly, that it could impose a concurrent rather than a consecutive 60-month sentence—the court would have imposed a concurrent term. (ECF No. 27 at 8). Although he acknowledged that the First Step Act does not squarely address his situation, defendant argued that the sentencing court's alleged misapprehension of its authority was sufficiently serious to qualify as an extraordinary and compelling reason for relief. (ECF No. 27 at 8–9). Defendant also pointed to his rehabilitative efforts while incarcerated, while recognizing that rehabilitation alone does not justify compassionate release. (Def.'s Reply, ECF No. 31 at 5).

The Court rejected those arguments. It agreed with the government that defendant was attempting to repackage a claim previously raised under 28 U.S.C. § 2255 as a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (ECF No. 30 at 1, 6–8; Order at 7). The Court further concluded that defendant had not identified any change in law that would require a sentencing judge today to run his federal sentence concurrently with his Superior Court sentence or otherwise create the gross disparity required by U.S.S.G. § 1B1.13(b)(6). (Order at 7). Instead, the Court explained that, although the sentencing judge had discretion to impose a concurrent sentence, 18 U.S.C. § 3584(a) provides that multiple terms imposed at different times run consecutively unless

4

the court orders otherwise. (Order at 7–8). The Court also noted the government's point that defendant's federal sentence arose from conduct unrelated to his Superior Court conviction and sentence. (ECF No. 30 at 9–10; Order at 8). And while the Court acknowledged defendant's rehabilitation, it held that rehabilitation alone is not an extraordinary and compelling reason for relief and did not reach whether rehabilitation affected the extent of any sentence reduction because no qualifying basis for relief had been shown. (ECF No. 31 at 5; Order at 8).

The Court therefore held that defendant had failed to establish extraordinary and compelling reasons warranting compassionate release and denied the motion. (Order at 8–9).

### III. Current Status

The BOP computation reflects that defendant was paroled from his D.C. Code sentence on August 12, 2025, and then began serving the consecutive 60-month federal sentence imposed in this case. (Gov. Ex. 1, Sentencing Computation Data). Defendant is currently designated to FCI Danbury. *Id.* To date, defendant has served only a small portion—approximately seven months— of the 60-month federal sentence for conspiracy to distribute cocaine base. *Id.* His projected release date is November 14, 2029, after application of 270 days of good-conduct time. *Id.*

### IV. Instant Motion

On November 20, 2025, defendant submitted the instant *pro se* motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A) and § 3582(c)(2). (ECF No. 33). The government respectfully submits this opposition.

## <u>ARGUMENT</u>

### I.    Legal Principles

This matter comes before the Court on defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Before the enactment of the First Step Act in 2018, only the Bureau of

Prisons could seek compassionate release for a defendant. *See United States v. Long*, 997 F.3d 342, 348 (D.C. Cir. 2021). With the passage of the First Step Act, however, defendants now may file for compassionate release on their own behalf. *See id.* As amended by the First Step Act, § 3582(c)(1)(A) now states in relevant part as follows:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)    extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

In *Long*, the D.C. Circuit held that the policy statement set forth at U.S.S.G. § 1B1.13 "is not applicable to compassionate release motions filed by defendants." 997 F.3d at 347. The Court of Appeals later held, however, that although § 1B1.13 is not binding in connection with motions filed by defendants, courts may consider it as "persuasive authority." *United States v. Jenkins*, 50 F.4th 1185, 1195 (D.C. Cir. 2022).

Recently, the United States Sentencing Commission ("USSC") voted to amend USSG § 1B1.13, the policy statement that governs 18 U.S.C. § 3582(c)(1)(A). This amendment, which significantly impacted the available grounds for federal compassionate release, took effect on November 1, 2023. In relevant part, the amendment revised § 1B1.13 to reflect that a defendant is

now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), thereby making § 1B1.13 applicable *both* to defendant-filed and BOP-filed motions. The amendment also expanded the list of "extraordinary and compelling reasons" by adding "Medical Circumstances" subcategories; modifying the "Family Circumstances" category; adding a "Victim of Abuse" category; revising the "Other Reasons" category; and adding an "Unusually Long Sentences" category, permitting consideration of non-retroactive changes in law in a narrow set of circumstances.

As the movant, the defendant bears the burden to establish that early release is warranted. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014). To do so, the defendant must show (a) that he has exhausted his right to appeal the BOP's failure to seek compassionate release on his behalf or that 30 days have lapsed since he sought a reduction in sentence from the warden of his BOP facility; (b) the existence of extraordinary and compelling circumstances sufficient to warrant his early release; and (c) that weighing the applicable § 3553(a) factors counsel in favor of early release.

## II.    Defendant Has Partially Exhausted Administrative Remedies

First, as noted, 18 U.S.C. § 3582(c) provides that a court may not modify a term of imprisonment once it has been imposed unless it does so "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . ." § 3582(c)(1)(A). Thus, a "court may consider a defendant's [compassionate release] motion only after the defendant has" exhausted those remedies. *United States v. Morales*, No. 06-248-4 (JDB), 2021 WL 4622461, at *2 (D.D.C. Oct. 7, 2021). "The statute's exhaustion requirement is mandatory." *Id.* (citing *United States v. Alam*, 960 F.3d 831, 833-36 (6th Cir. 2020);

*United States v. Douglas*, No. 10-171-4 (JDB), 2020 WL 5816244, at *2 (D.D.C. Sept. 30, 2020) (collecting cases)).[2]

Additionally, § 3582(c)(1)(A) requires that the factual basis for a motion presented to the Court align with the request submitted to the Warden. *See United States v. Douglas*, 2020 WL 5816244, at *2 (D.D.C.). As another court in this district has explained:

> [A]lthough an inmate's request to the warden need not be identical in detail or specificity to the motion made in court[,] there must be a reasonable degree of overlap between the administrative request and subsequent motion which gives the BOP a fair opportunity to consider whether to make the motion on the defendant's behalf.

*United States v. Morales*, 2021 WL 4622461, at *2 (D.D.C.).

Here, on October 17, 2025, defendant received a Reduction in Sentence denial letter from Warden C. Flowers. (Ex. 1, ECF No. 33). The denial letter reflects that defendant sought relief based on "sentencing disparities, change[s] in guidelines, and FSA drug guidelines." *Id.* But the denial letter does not reflect that defendant presented rehabilitation as a basis for relief, nor does it contain the full range of arguments later advanced in his motion to this Court. *See id.* Thus, the administrative request appears to overlap with defendant's sentencing-disparity theory, but not with his rehabilitation argument or any broader challenge to the Bureau of Prisons' execution of his sentence.

Accordingly, defendant has, at most, exhausted his administrative remedies as to his sentencing-related claim. His rehabilitation argument, and any other materially different claim not first presented to the warden, is unexhausted and may be denied on that basis. *See Douglas*, 2020 WL 5816244, at *2.

---

[2] To be clear, we view this requirement as a mandatory claims-processing rule, not a jurisdictional bar to this Court's consideration of the claims. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir.), *cert. denied*, 141 S.Ct. 920 (2020) ("the requirement [to exhaust administrative remedies] is *not* jurisdictional, but [] it *is* mandatory") (emphasis in original).

In any event, even assuming exhaustion in the interest of efficiency, [3] defendant's motion fails on the merits for the reasons set forth below.

### III.    Defendant Has Not Demonstrated Extraordinary and Compelling Reasons for Compassionate Release[4]

This Court should deny defendant's request for compassionate release because he has failed to demonstrate that his arguments regarding sentencing disparity, rehabilitation, or any other asserted grounds constitute "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A).

### A.    Defendant's Reliance on the Fair Sentencing Act, the First Step Act, and 18 U.S.C. § 3582(c)(2) Is Misplaced

Defendant's reliance on 18 U.S.C. § 3582(c)(2) and the First Step Act's retroactive application of the Fair Sentencing Act of 2010 is misplaced. The Fair Sentencing Act reduced the sentencing disparity between crack and powder cocaine by increasing the drug quantities required to trigger certain statutory penalties under 21 U.S.C. § 841. *See Dorsey v. United States*, 567 U.S. 260, 264, 269 (2012). Section 404 of the First Step Act later made sections 2 and 3 of the Fair Sentencing Act retroactive for defendants convicted of a "covered offense," that is, "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act." First Step Act of 2018, Pub. L. No. 115-391, § 404(a), 132 Stat. 5194, 5222.

---

[3] *See United States v. Lawson*, No. 03-282-1 (JDB), 2022 WL 2663887, at *4 (D.D.C. July 11, 2022) ("[A] court need not resolve exhaustion when, even assuming the defendant has properly exhausted his request, his motion fails on the merits." (cleaned up)), aff'd, No. 22-3049, 2023 WL 4044609 (D.C. Cir. June 16, 2023).

[4] As an initial matter, defendant's challenge to the Bureau of Prisons' determination regarding First Step Act time-credit eligibility is not properly raised in a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Such claims challenge the execution of a sentence—not its validity—and must be pursued through administrative remedies and, if necessary, a habeas corpus petition under 28 U.S.C. § 2241 in the district of confinement. This Court therefore lacks jurisdiction to consider that claim in this proceeding.

But defendant was not convicted under 21 U.S.C. § 841 or any other statute whose penalties were modified by sections 2 or 3 of the Fair Sentencing Act. He was convicted under 18 U.S.C. § 371. (*See* Presentence Investigation Report). Because the Fair Sentencing Act did not modify the statutory penalties for § 371, defendant's offense is not a "covered offense" under section 404 of the First Step Act. Eligibility under section 404 turns on the statute of conviction whose penalties were modified by the Fair Sentencing Act, not the underlying conduct. *See United States v. White*, 984 F.3d 76, 86 (D.C. Cir. 2020).

Moreover, defendant received a 60-month sentence for his conviction under 18 U.S.C. § 371—the statutory maximum for that offense—which remains unchanged today. Thus, even if sentenced today, the statutory penalties applicable to defendant's offense would be the same.

Nor does 18 U.S.C. § 3582(c)(2) help defendant. That provision permits a sentence reduction only where the Sentencing Commission has retroactively lowered the defendant's applicable Guideline range. Defendant identifies no retroactive amendment that lowered the Guideline range applicable to his conviction under § 371. He therefore is not eligible for relief under § 3582(c)(2).

To the extent defendant argues more broadly that changes in crack-cocaine sentencing law create a disparity between his sentence and sentences imposed today, that argument also fails. As this Court already held in denying defendant's prior compassionate-release motion, defendant has not identified any change in law that would require a judge sentencing him today to run his federal sentence concurrently with his Superior Court sentence or otherwise create the sort of gross disparity that could support relief. (ECF No. 30 at 7). The Court further explained that even if defendant believes the sentencing judge erred in imposing a consecutive sentence, such a belief does not itself constitute an "extraordinary and compelling reason" for relief under § 3582(c)(1)(A). (ECF No. 30 at 6–7). Section 404 does not create a freestanding right to resentencing, and even for eligible

defendants, any reduction remains discretionary. *See United States v. Palmer*, 35 F.4th 841, 850 (D.C. Cir. 2022); *Concepcion v. United States*, 597 U.S. 481, 497, 501 (2022).

Accordingly, defendant's reliance on the Fair Sentencing Act, the First Step Act, and § 3582(c)(2) does not establish an extraordinary and compelling reason for relief.

**B.    This Court Lacks Jurisdiction Over Defendant's Challenge to the Bureau of Prisons' Execution of His Sentence**

To the extent defendant challenges the Bureau of Prisons' determination that he is ineligible for First Step Act earned time credits, that claim is not properly before this Court. Such a claim does not present an "extraordinary and compelling reason" for relief under 18 U.S.C. § 3582(c)(1)(A). Rather, it challenges the way defendant's sentence is being executed—specifically, the Bureau of Prisons' computation and administration of his sentence.

Claims challenging the execution of a sentence must be pursued, if at all, through the Bureau of Prisons' administrative process and then by petition for a writ of habeas corpus under 28 U.S.C. § 2241. For core habeas petitions challenging present physical confinement, jurisdiction lies only in the district of confinement, and the proper respondent is the petitioner's immediate custodian. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434, 443 (2004). Where, as here, the petitioner is confined outside this District, this Court lacks jurisdiction over the proper respondent. *See Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1239 (D.C. Cir. 2004).

The Bureau of Prisons' sentence computation data reflects that defendant is currently housed at FCI Danbury. (Gov. Ex. 1, Sentencing Computation Data). Because defendant is confined outside the District of Columbia, this Court lacks jurisdiction over any claim challenging the Bureau of Prisons' administration of his sentence or its application of earned time credits.

Accordingly, to the extent defendant seeks relief based on the Bureau of Prisons' treatment of his D.C. Code and federal sentences, that claim should be dismissed for lack of jurisdiction or denied as not cognizable under § 3582(c)(1)(A).[5]

## C. Defendant's Rehabilitative Efforts Do Not Establish Extraordinary and Compelling Reasons

Defendant also argues that his rehabilitative efforts during incarceration support compassionate release. (ECF No. 33 at 3–6). As defendant himself acknowledges, rehabilitation may be considered alongside other factors; however, Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). And because defendant's remaining arguments fail as a matter of law, rehabilitation does not become extraordinary and compelling by being paired with legally insufficient claims. Accordingly, defendant's rehabilitative efforts do not establish a basis for relief under 18 U.S.C. § 3582(c)(1)(A).

In summary, defendant has failed to establish any extraordinary and compelling reason for release. His motion should therefore be denied.

## IV.    The § 3553(a) Factors Weigh Against Release

As explained above, defendant has not established an extraordinary and compelling reason for compassionate release under 18 U.S.C. § 3582(c)(1)(A). That failure alone requires denial of his motion. Even if the Court were to conclude otherwise, however, the factors set forth in 18 U.S.C. § 3553(a) independently foreclose relief.

---

[5] Although defendant does not expressly argue in his present motion that the Court erred in ordering his federal sentence to run consecutively to his D.C. Superior Court sentence, his sentencing-disparity argument appears to rest in part on that premise. To the extent defendant's motion implicitly challenges the legality of the consecutive sentence, 18 U.S.C. § 3582(c)(1)(A) is not the proper vehicle for such a claim. Defendant previously raised a concurrency challenge under 28 U.S.C. § 2255, and this Court denied relief. (ECF No. 26). The Court also later held that defendant had identified no change in law that would require a judge sentencing him today to impose a concurrent sentence. (ECF No. 30 at 7).

"Being legally eligible to seek sentencing relief is one thing. Persuading a district court to exercise its discretion to grant such relief is another." *United States v. Smith*, 896 F.3d 466, 473 (D.C. Cir. 2018). In deciding whether to grant a sentence reduction for which a defendant is legally eligible, a sentencing court must consider the factors set forth in 18 U.S.C. § 3553(a), to the extent applicable. *Id.* (citing *Dillon v. United States*, 560 U.S. 817, 824–25 (2010)). Those factors include the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a).

The Court must make an individualized assessment based on the facts presented and adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. *See Gall v. United States*, 552 U.S. 38, 50 (2007). Thus, even if a defendant establishes an extraordinary and compelling reason for a reduction, the Court may reduce the sentence only if the balance of the § 3553(a) factors favors release. *See United States v. Holroyd*, 464 F. Supp. 3d 14, 19 (D.D.C. 2020) ("If a defendant still poses a danger to the community or if the balance of factors under § 3553(a) favor continued imprisonment, these are independent reasons to deny a motion for compassionate release.").

Here, the § 3553(a) factors weigh strongly against granting defendant a sentence reduction.

### 1. *Nature and Circumstances of the Offense*

Defendant's offense was serious, and the surrounding circumstances underscore why a sentence reduction is not warranted. In April 1992, while on parole for a second-degree murder conviction in 1982, defendant engaged in a federal drug conspiracy involving cocaine base. Drug

trafficking is a serious offense that harms communities, fuels addiction, and contributes to violence and instability. Defendant played an active role in distributing cocaine base. (Ex. F, ECF No. 27-5).

Within months of that federal drug conspiracy, defendant committed additional violent offenses in December 1992. Those offenses resulted in the deaths of Anthony and Willie Ellis and the serious injury of Eric Wimbush. The D.C. Superior Court treated those violent offenses as distinct crimes, and this Court likewise concluded that the federal drug conspiracy and the Superior Court offenses were separate under the Sentencing Guidelines and warranted separate punishment. (ECF No. 26 at 13–14).

Granting defendant's request would minimize the seriousness of these distinct offenses and fail to reflect the separate harms caused by each. It would improperly collapse separate criminal conduct into a single punishment and would undermine the sentencing purposes set forth in 18 U.S.C. § 3553(a).

### 2. History and Characteristics of the Defendant

Defendant's history and characteristics also weigh strongly against release. Defendant's criminal history reflects a serious and troubling pattern. At age 18, defendant committed a homicide in January 1982 and was convicted of second-degree murder. He was sentenced to 10 to 30 years' imprisonment but was paroled in January 1992 after serving less than ten years. Rather than using that opportunity to reintegrate into society lawfully, defendant returned to criminal conduct almost immediately. Within months, he engaged in the federal drug conspiracy at issue here, and later that same year he committed additional violent offenses, including two homicides and a violent assault.

That sequence matters. It shows recidivism after a prior serious conviction, after a substantial period of incarceration, and after release on parole. It also shows that defendant previously received

an opportunity to demonstrate that he could comply with the law and live under supervision but failed to do so.

The government acknowledges that defendant has completed significant educational, vocational, and rehabilitative programming during his incarceration and that his disciplinary record reflects no new infractions since 2019. (Gov. Ex. 2, Education Transcript); (Gov. Ex. 3, Disciplinary Record). Those facts are to defendant's credit. But they do not outweigh the broader record.

Importantly, defendant also participated in substantial programming during earlier periods of incarceration before his release on parole in 1992. Despite those opportunities and efforts, he returned to serious criminal conduct within months of release. That history diminishes the force of defendant's current rehabilitation argument. His programming is commendable, but it is not new proof that the purposes of sentencing have been fully satisfied. The record shows that similar rehabilitative efforts in the past did not prevent defendant from reoffending in grave and violent ways.

Nor does the absence of recent disciplinary infractions alter that conclusion. Defendant's improved institutional record is relevant and positive, but it does not erase the seriousness of his criminal history, the speed and severity of his recidivism after parole, or the sentencing rationale for the consecutive federal sentence at issue here.

### 3. The Need for the Sentence Imposed

The sentence imposed in this case remains necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. Those considerations weigh strongly against relief.

Most importantly, defendant began serving the 60-month federal sentence in this case only on August 12, 2025, after completing his D.C. Code sentence. (Gov. Ex. 1). Thus, defendant has served only a small portion of the federal sentence now at issue. His full-term date is August 11,

2030, and his projected release date is November 14, 2029. (*Id.*). Granting relief at this stage would effectively nullify the Court's decision to impose a separate, consecutive sentence for a separate federal offense.

That point is central. Defendant's federal sentence was imposed consecutively to ensure that he would be held independently accountable for the federal drug conspiracy. Reducing the sentence now would substantially dilute that punishment and undermine the Court's determination that separate accountability was necessary. It would fail to reflect the seriousness of the offense, would not promote respect for the law, and would not provide just punishment.

The context of defendant's criminal conduct reinforces that conclusion. Defendant was paroled in January 1992 after serving less than ten years of a sentence for second-degree murder. Within months, he engaged in a federal drug conspiracy. Later that same year, while still on parole, he committed additional violent offenses resulting in multiple deaths and serious injury. These were not isolated acts or part of a single course of conduct. They were separate crimes, committed at different times, and they demonstrated an escalating disregard for law and human life. This Court already recognized that the federal and Superior Court offenses were distinct and not relevant conduct for Guidelines purposes. (ECF No. 26 at 13–14). Consistent with that conclusion, the Court has also previously observed that the federal drug conspiracy and the Superior Court homicide offenses arose from separate criminal conduct and warranted separate punishment. (ECF No. 30 at 6–7).

The government does not dispute that defendant has made positive use of his time in custody. His programming and his lack of disciplinary infractions since 2019 weigh in his favor to some degree. But those facts do not make him eligible for release considering the full § 3553(a) analysis. The question is not whether defendant has done some positive things while incarcerated. The question

is whether reducing this sentence, after only a few months of service, would be consistent with the statutory purposes of sentencing. It would not.

Defendant's history shows that prior incarceration, prior programming, and prior release did not prevent him from returning to serious criminal conduct. That history, combined with the fact that he has served only a small portion of the consecutive federal sentence, weighs heavily against release. Whatever credit the Court gives defendant for his current institutional record, that record does not overcome the seriousness of his offenses, the distinct purpose of the federal sentence, and the need for continued punishment and deterrence.

### 3. *Defendant's Release Plan*

Defendant does not present a meaningful release plan. He does not explain with specificity where he would reside, how he would support himself, or how he would successfully transition back into the community. Without a concrete and credible release plan, the Court cannot conclude that early release would be consistent with the goals of sentencing or with public safety. *See United States v. Allison*, 2020 WL 3077150, at *4 (W.D. Wash. June 10, 2020) ("An appropriate release plan is essential to ensure that a defendant actually has a safe place to live and access to health care in these difficult times.").

### CONCLUSION

For the reasons stated above, Defendant has not demonstrated that a sentence reduction is warranted, and his *pro se* motion should therefore be denied.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

KACIE M. WESTON
Chief, Special Proceedings Division

JULIA R. COSANS
Assistant United States Attorney
Deputy Chief, Special Proceedings Division


_____/s/_____

Kamilah O. House
Assistant United States Attorney Special
Proceedings Division
Bar No. 981377
601 D Street, N.W. Washington,
D.C. 20530
202-815-8660
Kamilah.house@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th of March, 2026, I caused a copy of the foregoing notice to

be served on counsel of record via First-Class mail to:

Rayfield Wilson
Inmate Number: 18320-016
FCI Jesup
2600 Highway 301 South
Jesup, GA 31599

/s/_____

Kamilah O. House
Assistant United States Attorney

# Gov. Ex. 1, Sentencing Computation Data

```
 BOPQR  540*23 *              SENTENCE MONITORING            *     01-26-2026
PAGE 001        *              COMPUTATION DATA              *     10:14:51
                               AS OF 01-26-2026


REGNO..: 18320-016 NAME: WILSON, RAYFIELD JR


FBI NO...........: 979796W9          DATE OF BIRTH: 06-22-1963  AGE:  62
ARS1.............: DAN/A-DES
UNIT.............: 2 GP               QUARTERS.....: H03-025L
DETAINERS........: NO                 NOTIFICATIONS: NO

FSA ELIGIBILITY STATUS IS: INELIGIBLE

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

HOME DETENTION ELIGIBILITY DATE....: 05-14-2029

THE INMATE IS PROJECTED FOR RELEASE: 11-14-2029 VIA GCT REL


---------------------CURRENT JUDGMENT/WARRANT NO: 020 -----------------------

COURT OF JURISDICTION...........: DIST OF COLUMBIA, DISTRICT CRT
DOCKET NUMBER...................: CR 93-354-01
JUDGE...........................: JACKSON
DATE SENTENCED/PROBATION IMPOSED: 06-29-2025
DATE COMMITTED..................: 06-29-2025
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO


                FELONY ASSESS  MISDMNR ASSESS  FINES          COSTS
NON-COMMITTED.: $50.00         $00.00          $00.00         $00.00

RESTITUTION...: PROPERTY:  NO  SERVICES:  NO         AMOUNT:  $00.00

-----------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  409    21:841 & 846 SEC 841-851

OFF/CHG: 18:371 - CONSPIRACY TO DISTRIBUTE COCAINE BASE

 SENTENCE PROCEDURE.............: 3559 SRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:    60 MONTHS
 TERM OF SUPERVISION............:     3 YEARS
 DATE OF OFFENSE................: 04-09-1992




G0002      MORE PAGES TO FOLLOW . . .
```

```
BOPQR  540*23 *              SENTENCE MONITORING          *     01-26-2026
PAGE 002 OF 002 *             COMPUTATION DATA            *     10:14:51
                             AS OF 01-26-2026


REGNO..: 18320-016 NAME: WILSON, RAYFIELD JR


------------------------CURRENT COMPUTATION NO: 020 ------------------------

COMPUTATION 020 WAS LAST UPDATED ON 07-10-2025 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 08-07-2025 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 020: 020 010

DATE COMPUTATION BEGAN..........: 08-12-2025
TOTAL TERM IN EFFECT............:    60 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:     5 YEARS
EARLIEST DATE OF OFFENSE........: 04-09-1992

TOTAL PRIOR CREDIT TIME.........: 0
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 270
TOTAL GCT EARNED................: 0
STATUTORY RELEASE DATE PROJECTED: 11-14-2029
ELDERLY OFFENDER TWO THIRDS DATE: 12-11-2028
EXPIRATION FULL TERM DATE.......: 08-11-2030
TIME SERVED.....................:     5 MONTHS     15 DAYS
PERCENTAGE OF FULL TERM SERVED..:   9.2
PERCENT OF STATUTORY TERM SERVED: 10.7

PROJECTED SATISFACTION DATE.....: 11-14-2029
PROJECTED SATISFACTION METHOD...: GCT REL

REMARKS.......: 7-10-25: CS TO COMP 010 LIFE'S SENTENCE, DCB = 08-12-25 THE
                PAROLE EFFECTIVE DATE OF COMP 010 P/ECM




G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

# Gov. Ex. 2, Education Transcript

```
     BOPQR            *      INMATE EDUCATION DATA       *      01-26-2026
PAGE 001              *           TRANSCRIPT             *      10:13:32


REGISTER NO: 18320-016    NAME..: WILSON                        FUNC: PRT
FORMAT.....: TRANSCRIPT    RSP OF: DAN-DANBURY FCI


-------------------------- EDUCATION INFORMATION --------------------------
FACL ASSIGNMENT DESCRIPTION                 START DATE/TIME STOP DATE/TIME
DAN  ESL HAS    ENGLISH PROFICIENT          08-07-2001 1654 CURRENT
DAN  GED HAS    COMPLETED GED OR HS DIPLOMA 06-01-1991 1037 CURRENT


--------------------------- EDUCATION COURSES ---------------------------
SUB-FACL    DESCRIPTION                  START DATE  STOP DATE EVNT AC LV  HRS
JES         V-CUSTODIAL MAINTENANCE      02-10-2025 05-29-2025  P   C  M   160
JES         HEALTHIER MIND AND BODY @ FCI 10-01-2024 01-11-2025  P   C  P   10
JES         RPP#1 AIDS AWARENESS         07-10-2024 07-10-2024  P   C  P   1
ATW         R1-STRESS 3, USP             09-21-2023 11-10-2023  P   C  P   4
ATW         R1-STRESS 2, USP             08-11-2023 09-21-2023  P   C  P   4
ATW         R1-STRESS 1, USP             06-29-2023 08-11-2023  P   C  P   4
POL         VT RECYCLING & WASTE PROGRAM 05-02-2022 10-06-2022  P   W  I   12
POL         EXERCISE AND MENTAL HEALTH   01-07-2022 01-21-2022  P   C  P   4
POL         BODY COMP: DIET & EX. P1 RPP1 12-06-2021 12-31-2021  P   C  P   12
POL         BODY COMP: DIET & EX. P1 RPP1 08-31-2021 09-23-2021  P   C  P   12
POL         STAY FIT AS YOU AGE - 1 RPP1 08-10-2021 08-28-2021  P   C  P   9
POL         DIABETES PREVENT & MGMT RPP1 10-01-2020 11-05-2020  P   C  P   6
POL         ACE TUTOR TRAINING CLASS     09-26-2019 01-16-2020  P   C  P   28
MCR         AARP 50+ FINANCES            05-31-2018 06-06-2018  P   C  P   2
MCR         VT COMMUNICATIONS            03-16-2018 04-10-2018  P   C  E   10
MCR         VT TOOLS PM/POWER AND HAND   03-15-2018 03-16-2018  P   W  I   0
LEW SMU     SMU RADIO WELLNESS ROUND C   10-04-2016 01-06-2017  P   C  P   9
LEW SMU     ACTIVITY PACKET ROUND C      10-04-2016 01-06-2017  P   C  P   6
LEW SMU     RADIO SMU PARENTING C RPP6   08-09-2016 10-19-2016  P   C  P   5
LEW SMU     SMU ACE ROUND C              08-26-2016 10-15-2016  P   C  P   20
LEW SMU     SMU PERSONAL GROWTH II RPP 6 07-22-2016 08-18-2016  P   C  P   3
LEW SMU     SMU PERSONAL GROWTH I RPP 6  06-30-2016 07-22-2016  P   C  P   3
HAZ CHG     (EMPLOYMENT) MS OFFICE 2010  11-04-2014 02-07-2015  P   C  M   130
HAZ CHG     (PG) USP BLOOD PRESSURE AWARE 01-23-2015 01-23-2015  P   C  P   8
HAZ CHG     (PG)FACING STIGMATIZATION 12HR 03-19-2014 04-23-2014  P   C  P   12
HAZ CHG     RPP - SELF CONTROL 12 HRS    10-24-2013 12-12-2013  P   C  P   12
HAZ CHG     (PG) PCTC-BUSINESS LEADERSHIP 08-30-2013 08-30-2013  P   C  E   2
HAZ CHG     (PG) PCTC-PERSONAL MONEY MNGT 08-03-2013 08-03-2013  P   C  E   2
HAZ CHG     (PG)PCTC-FUTURE GOALS/MISSION 07-11-2013 07-11-2013  P   C  E   2
HAZ CHG     (EM) INFORMATIONAL JOB FAIR  06-27-2013 06-27-2013  P   C  P   2
HAZ CHG     (EM) INTERVIEW JOB FAIR      06-27-2013 06-27-2013  P   C  P   2
HAZ CHG     (PG)PCTC-COMMUNITY RESOURCES 06-21-2013 06-21-2013  P   C  E   2
HAZ CHG     (ES) TIME MANAGEMENT SKILLS  06-18-2013 06-18-2013  P   C  P   1
HAZ CHG     (ES) RESPONSIBILITY: EMPLYMNT 06-18-2013 06-18-2013  P   C  P   1
HAZ CHG     (ES) EMPLYMNT GOAL SETTING 101 06-18-2013 06-18-2013  P   C  P   1
HAZ CHG     (ES) DRESS: 4 EMPLYMNT SUCCESS 06-18-2013 06-18-2013  P   C  P   1
HAZ CHG     (ES)GETTING ALONG W/ CO-WRKERS 06-18-2013 06-18-2013  P   C  P   1
HAZ CHG     (ES) COMM SKILLS 4 EMPLYMNT  06-18-2013 06-18-2013  P   C  P   1
HAZ         (PG) FORGIVE: PEACE W/PAST-RPP 09-27-2012 12-04-2012  P   C  P   16
BSY         HEALTH SVCS HYPERTENSION SEMIN 12-13-2011 12-13-2011  P   C  P   2


G0002      MORE PAGES TO FOLLOW . . .
```

```
    BOPQR            *       INMATE EDUCATION DATA        *      01-26-2026
PAGE 002             *            TRANSCRIPT             *      10:13:32


REGISTER NO: 18320-016    NAME..: WILSON                    FUNC: PRT
FORMAT.....: TRANSCRIPT    RSP OF: DAN-DANBURY FCI


----------------------------  EDUCATION COURSES  ----------------------------
SUB-FACL    DESCRIPTION                     START DATE  STOP DATE  EVNT AC LV  HRS
BSY         CALISTHENICS                    08-02-2011 10-08-2011  P   C  P     5
BSY         EXERCISE FITNESS                08-01-2011 10-08-2011  P   C  P    12
BSY         BEGINNER YOGA                   07-31-2011 10-07-2011  P   C  P    12
BSY         ACVANCED STEP AEROBICS          04-01-2011 06-30-2011  P   C  P    12
BSY         BASIC BUSINESS PRINCIPLES       03-08-2011 05-31-2011  P   C  P    24
BSY         STEP AEROBICS                   01-15-2011 04-01-2011  P   C  P    12
BSY         MEDITATION                      01-15-2011 04-01-2011  P   C  P    12
BSY         ABDOMINALS                      01-15-2011 04-01-2011  P   C  P    12
BSY         BEGINNER YOGA                   01-15-2011 04-01-2011  P   C  P    12
BSY         STOP THE VIOLENCE;MON;7:40AM    09-15-2010 10-28-2010  P   C  P    24
BSY         ONE WAY COURSE: MAKING CHANGES  02-18-2009 05-26-2009  P   C  P    22
BSY         FACILITATING CLASS FOR ONE WAY  10-29-2008 01-29-2009  P   C  P    20
BSY         LEADERSHIP CLASS FOR ONE WAY    07-25-2008 10-29-2008  P   C  P    20
BSY         PUBLIC SPEAKING FOR ONE WAY     03-31-2008 07-11-2008  P   C  P    20
BSY         CDL;R;6:00PM                    04-10-2008 06-11-2008  P   C  P    24
BSY         RPP 1/USP HEALTH FAIR/F         05-22-2008 05-22-2008  P   C  P     4
BSY         COURAGE TO HEAL PT.1;T;6:30PM   01-10-2008 03-13-2008  P   C  P    24
BSY         BIG MAN CALIST-BEG;M&W;7:30AM   02-17-2007 03-14-2007  P   C  P    12
BSY         CALISTENICS,T&R,5:00-6:00PM     07-07-2005 02-01-2006  P   C  P    12
BSY         CD LAW LIB ORIENTATION          03-11-2005 03-11-2005  P   C  P     1
BSY         COMPUTER LAB ORIENTATION        01-04-2005 01-04-2005  P   C  P     1
LVN         6 HOUR FORKLIFT SAFETY COURSE   01-14-2004 01-15-2004  P   C  P     6
LVN         GRAPHIC ARTS 9-10 AM MON-THU    04-22-2002 09-30-2002  P   C  C    92
MEM         TYPING-EVENING                  10-31-1989 03-15-1990  P   C  M    31
MEM         ELEMENTARY SPANISH I            09-08-1989 01-08-1990  P   W  V     6
MEM         LODGING MANAGEMENT I            09-20-1989 01-08-1990  P   C  P    96
MEM         INVESTMENT IN EXCELLENCE        09-20-1989 01-08-1990  P   C  P    96
MEM         DEVELOPMENTAL MATH              09-08-1989 01-08-1990  P   C  P    72
MEM         BASIC WRITING                   09-27-1989 11-08-1989  P   W  V     0
OTV         CONTINUING EDUC WORKSHOP        11-22-1988 11-22-1988  P   C  P     2
OTV         CONTINUING EDUC WORKSHOP        11-08-1988 11-08-1988  P   C  P     2
OTV         PUBLIC SPEAKING                 09-08-1988 11-02-1988  P   W  V    60
OTV         INTRO TO ETHICS                 09-02-1988 11-02-1988  P   W  V    60
OTV         GENERAL BIOLOGY II              09-02-1988 11-02-1988  P   W  V    60
OTV         MANAGEMENT & ORGANI. BEHAVIOR   09-02-1988 12-23-1988  P   W  V    60
OTV         INTRO TO PHILOSOPHY             06-01-1988 07-15-1988  P   C  P   100
OTV         INTRO TO PHILOSOPHY             06-01-1988 07-15-1988  P   C  P   100
OTV         INTRO TO PSYCHOLOGY             06-03-1988 07-15-1988  P   C  P   100
OTV         INTRO TO PSYCHOLOGY             06-03-1988 07-15-1988  P   C  P   100
OTV         SPANISH CLASS T&W AFTERNOONS    06-28-1988 07-29-1988  P   C  P    18
OTV         CONTINUING EDUC WORKSHOP        06-24-1988 06-24-1988  P   C  P     3
OTV         PRE-RELEASE WORKSHOP            06-24-1988 06-24-1988  P   C  P     2
OTV         VOCATIONAL TRAINING ASSESSMENT  06-17-1988 06-17-1988  P   C  P     3
OTV         HEALTH WORKSHOP                 06-10-1988 06-10-1988  P   C  P     2
OTV         AMERICA AND THE MOVIES          01-28-1988 05-13-1988  P   C  P   100

G0002       MORE PAGES TO FOLLOW . . .
```

```
  BOPQR          *        INMATE EDUCATION DATA       *     01-26-2026
PAGE 003 OF 003 *                TRANSCRIPT           *     10:13:32


REGISTER NO: 18320-016    NAME..: WILSON              FUNC: PRT
FORMAT.....: TRANSCRIPT    RSP OF: DAN-DANBURY FCI


---------------------------  EDUCATION COURSES  -----------------------------
SUB-FACL   DESCRIPTION                   START DATE  STOP DATE EVNT AC LV  HRS
OTV        APPLIED LEARNING TECHNIQUES   01-28-1988 05-13-1988  P  C  P   100
OTV        ARTS AND VALUES               01-22-1988 05-13-1988  P  C  P   100
OTV        INTRODUCTION TO ALGEBRA       01-22-1988 05-13-1988  P  C  P   100
OTV        FAMILY LIVING WORKSHOP        04-28-1988 04-28-1988  P  C  P     3
OTV        JOB-SEARCH SKILLS WORKSHOP    04-22-1988 04-22-1988  P  C  P     2
OTV        BUSINESS EDUC WORKSHOP        04-01-1988 04-01-1988  P  C  P     2
OTV        HEALTH WORKSHOP               03-18-1988 03-18-1988  P  C  P     2
OTV        PERSONAL BANKING WORKSHOP     03-11-1988 03-11-1988  P  C  P     2
OTV        PRE RELEASE HEALTH WORKSHOP   11-09-1987 11-09-1987  P  C  P     2
OTV        BUSINESS EDUCATION, NON-COL   01-26-1987 04-01-1987  P  C  M   168
           GENERAL EDUCATION DEVELOPMENT 04-23-1985 03-24-1986  P  C  U   738
           TYPING                        03-10-1985 06-14-1985  P  C  U   216
           ADULT BASIC EDUCATION         12-03-1984 04-19-1985  P  C  U   251






G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

# Gov. Ex. 3, Disciplinary Record

```
    BOPQR          *         INMATE DISCIPLINE DATA          *     01-26-2026
PAGE 001          *     CHRONOLOGICAL DISCIPLINARY RECORD     *     10:16:29


REGISTER NO: 18320-016 NAME..: WILSON, RAYFIELD JR
FUNCTION...: PRT        FORMAT: CHRONO    LIMIT TO ____ MOS PRIOR TO 01-26-2026

-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3218484 - SANCTIONED INCIDENT DATE/TIME: 01-29-2019 1100
UDC HEARING DATE/TIME: 01-30-2019 0627
FACL/UDC/CHAIRPERSON.: MCR/3A/KEITH
REPORT REMARKS.......: LOSS OF COMMISSARY AND PHONE FOR 90 DAYS
  306  REFUSING WORK/PGM ASSIGNMENT - FREQ: 1
        LP COMM    / 90 DAYS / CS
                     FROM: 05-17-2019  THRU: 08-14-2019
         COMP:    LAW:    LOSS OF COMMISSARY FOR 90 DAYS
        LP PHONE   / 90 DAYS / CS
                     FROM: 05-17-2019  THRU: 08-14-2019
         COMP:    LAW:    LOSS OF PHONE FOR 30 DAYS
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3212847 - SANCTIONED INCIDENT DATE/TIME: 01-14-2019 1100
UDC HEARING DATE/TIME: 01-17-2019 1315
FACL/UDC/CHAIRPERSON.: MCR/3A/WORLEY
REPORT REMARKS.......: I CAN NOT COME TO THE COMPOUND
  306  REFUSING WORK/PGM ASSIGNMENT - FREQ: 1
        LP COMM    / 120 DAYS / CS
                     FROM: 01-17-2019  THRU: 05-16-2019
         COMP:    LAW:    120 DAYS LOSS OF COMMISSARY
        LP OTHER   / 120 DAYS / CS
                     FROM: 01-17-2019  THRU: 05-16-2019
         COMP:    LAW:    120 LOSS OF E-MAIL
        LP PHONE   / 120 DAYS / CS
                     FROM: 01-17-2019  THRU: 05-16-2019
         COMP:    LAW:    120 DAYS LOSS OF PHONE
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3203851 - SANCTIONED INCIDENT DATE/TIME: 12-19-2018 1120
UDC HEARING DATE/TIME: 12-21-2018 1620
FACL/UDC/CHAIRPERSON.: MCR/3A/WOODS
REPORT REMARKS.......: I AM IN FEAR FOR MY LIFE
  306  REFUSING WORK/PGM ASSIGNMENT - FREQ: 1
        LP COMM    / 60 DAYS / CC
                     FROM: 12-21-2018  THRU: 02-18-2019
         COMP:    LAW:    60 DAYS LOSS OF COMMISSARY
        LP PHONE   / 60 DAYS / CC
                     FROM: 12-21-2018  THRU: 02-18-2019
         COMP:    LAW:    60 DAYS LOSS OF PHONE
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2791312 - SANCTIONED INCIDENT DATE/TIME: 12-07-2015 0900
DHO HEARING DATE/TIME: 12-16-2015 1200
FACL/CHAIRPERSON.....: HAZ/CRADDOCK
REPORT REMARKS.......: ADMITS POSSESSING METHAMPHETAMINES



G0002      MORE PAGES TO FOLLOW . . .
```

```
  BOPQR           *        INMATE DISCIPLINE DATA           *      01-26-2026
PAGE 002          *   CHRONOLOGICAL DISCIPLINARY RECORD     *      10:16:29


REGISTER NO: 18320-016 NAME..: WILSON, RAYFIELD JR
FUNCTION...: PRT        FORMAT: CHRONO     LIMIT TO ___ MOS PRIOR TO 01-26-2026


DHO HEARING DATE/TIME: 12-16-2015 1200 REPORT 2791312 CONTINUED
   113  POSSESSING DRUGS/ALCOHOL - FREQ: 1 ATI: DDC
           DS         / 7 DAYS / CS
           COMP:   LAW:
           LP COMM    / 180 DAYS / CS
           COMP:   LAW:   RESTORE COMMISSARY ON 06-12-2016
           LP VISIT   / 1 YEARS / CC
           COMP:   LAW:   RESTORE VISITING ON 12-14-2016. RUN CC W/ 2774423
------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2774423 - SANCTIONED INCIDENT DATE/TIME: 10-13-2015 1907
DHO HEARING DATE/TIME: 11-04-2015 0925          DHO REPT DEL: 11-19-2015 0742
FACL/CHAIRPERSON.....: HAZ/CRADDOCK
REPORT REMARKS.......: ADMITTED TO USING MARIJUANA
   112  USE OF DRUGS/ALCOHOL - FREQ: 1 ATI: DDB
           DS         / 7 DAYS / CS
           COMP:   LAW:
           LP PHONE   / 180 DAYS / CS
           COMP:   LAW:   RESTORE PHONE ON 05-02-2016
           LP VISIT   / 1 YEARS / CS
           COMP:   LAW:   RESTORE VISITING ON 11-01-2016
------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2428808 - SANCTIONED INCIDENT DATE/TIME: 04-04-2013 0646
DHO HEARING DATE/TIME: 04-16-2013 0945
FACL/CHAIRPERSON.....: HAZ/LOHR D
REPORT REMARKS.......: I/M ADMITTED CHARGE/FIGHTING W/ANOTHER I/M-NO INJURIES/
                       OC DISPERSED TO STOP THEM
   201  FIGHTING WITH ANOTHER PERSON - FREQ: 1
           DS         / 10 DAYS / CS
           COMP:   LAW:
           LP COMM    / 3 MONTHS / CS
           COMP:   LAW:   4/16/2013 THRU 7/16/2013
           LP EMAIL   / 3 MONTHS / CS
           COMP:   LAW:   4/16/2013 THRU 7/16/2013
------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2428805 - SANCTIONED INCIDENT DATE/TIME: 04-04-2013 0646
UDC HEARING DATE/TIME: 04-05-2013 1440
FACL/UDC/CHAIRPERSON.: HAZ/E/CRADDOCK
REPORT REMARKS.......: INMATE STATED IR WAS CORRECT.
   307  REFUSING TO OBEY AN ORDER - FREQ: 1
           LP EMAIL   / 30 DAYS / CS
           COMP:   LAW:




G0002      MORE PAGES TO FOLLOW . . .
```

```
  BOPQR              *     INMATE DISCIPLINE DATA         *    01-26-2026
PAGE 003             *   CHRONOLOGICAL DISCIPLINARY RECORD  *    10:16:29


REGISTER NO: 18320-016 NAME..: WILSON, RAYFIELD JR
FUNCTION...: PRT       FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 01-26-2026

-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2270229 - SANCTIONED INCIDENT DATE/TIME: 02-20-2012 1120
UDC HEARING DATE/TIME: 02-24-2012 1440
FACL/UDC/CHAIRPERSON.: BSY/C UNIT/B CAUDILL
REPORT REMARKS.......: FOUND GUILTY BY THE UDC.
   312 BEING INSOLENT TO STAFF MEMBER - FREQ: 1
        LP COMM   / 30 DAYS / CS
        COMP:   LAW:   COMMISSARY RESTRICTION 2-24-12 THRU 3-24-12.
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2030488 - SANCTIONED INCIDENT DATE/TIME: 06-19-2010 1810
DHO HEARING DATE/TIME: 07-08-2010 1011
FACL/CHAIRPERSON.....: BSY/MORTIMER T
APPEAL CASE NUMBER(S): 636832
REPORT REMARKS.......: INMATE STATED HE DID NOT THREATEN STAFF
   203 THREATENING BODILY HARM - FREQ: 1 ATI: SN1
        DS        / 15 DAYS / CS / SUSPENDED 180 DAYS
        COMP:   LAW:
        LP COMM   / 3 MONTHS / CS
        COMP:   LAW:
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1639442 - SANCTIONED INCIDENT DATE/TIME: 09-01-2007 1215
DHO HEARING DATE/TIME: 09-17-2007 1210
FACL/CHAIRPERSON.....: SCH/J.PETRUCCI
REPORT REMARKS.......: I/M ADMITTED TO FIGHTING WITH ANOTHER I/M.
   201 FIGHTING WITH ANOTHER PERSON - FREQ: 1
        DS        / 30 DAYS / CS
        COMP:   LAW:   PUNISH FOR MISCONDUCT
                        EXPIRES 03-14-2008
        LP COMM   / 6 MONTHS / CS
        COMP:   LAW:   PREVENT FUTURE MISCONDUCT
                        EXPIRES 03-14-2008
        LP PHONE  / 6 MONTHS / CS
        COMP:   LAW:   PREVENT FUTURE MISCONDUCT
                        EXPIRES 03-14-2008
        LP VISIT  / 6 MONTHS / CS
        COMP:   LAW:   PREVENT FUTURE MISCONDUCT
                        EXPIRES 03-14-2008
        TRANSFER  / CS
        COMP:   LAW:   RECOMMEND DISCIPLINARY TRANSFER
                        GREATER NEED FOR SECURITY/SUPERVISION




G0002      MORE PAGES TO FOLLOW . . .
```

```
  BOPQR           *      INMATE DISCIPLINE DATA        *   01-26-2026
PAGE 004 OF 004 *   CHRONOLOGICAL DISCIPLINARY RECORD   *   10:16:29


REGISTER NO: 18320-016 NAME..: WILSON, RAYFIELD JR
FUNCTION...: PRT       FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 01-26-2026

-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 912228 - SANCTIONED  INCIDENT DATE/TIME: 08-19-2001 1905
DHO HEARING DATE/TIME: 09-10-2001 1340
FACL/CHAIRPERSON.....: LVN/LACY
REPORT REMARKS.......: DENIED GUILT, FOUND GUILTY BASED UPON BODY OF REPORT
   104  POSSESSING A DANGEROUS WEAPON - FREQ: 1
        DS       / 30 DAYS / CS
        COMP:   LAW:
        LP COMM  / 45 DAYS / CS
        COMP:   LAW:
        LP PHONE / 45 DAYS / CS
        COMP:   LAW:
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 25044 - SANCTIONED   INCIDENT DATE/TIME: 05-09-1991 1300
UDC HEARING DATE/TIME: 05-10-1991 0800
FACL/UDC/CHAIRPERSON.: LVN/B/BLACKMAN
REPORT REMARKS.......: 1 WEEK CELL RESTRICTION SUSPENDED FOR 180 DAYS
   310  BEING ABSENT FROM ASSIGNMENT - FREQ: 1
        RESTR QTRS / 1 WEEKS / CS / SUSPENDED 180 DAYS
        COMP:   LAW:




G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```